Filed 5/29/13  P. v. Everett CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055721 |
| v. | (Super.Ct.No. FWV1101391) |
| JAMIL URAIL EVERETT, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Mary E. Fuller, Judge.  Affirmed.

Law Office of Zulu Ali and Zulu Ali for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, James D. Dutton, and Donald W. Ostertag, Deputy Attorneys General, for Plaintiff and Respondent.

I

INTRODUCTION

A jury convicted defendant Jamil Urail Everett of possession of methamphetamine

1

(Health and Saf. Code, § 11377;[1] count 1); being a felon in possession of a firearm

(§ 12021, subd. (a)(1)); and possession of a false driver's license (§ 529.5, subd. (c);

count 3). The jury also found true, as to counts 1 and 2, allegations that defendant

committed the crimes while released on bail (§ 12022.1). Defendant admitted he had one

prison prior (§ 667.5, subd. (b)). The trial court sentenced defendant to eight years four

months in prison.

Defendant contends on appeal that the trial court abused its discretion in denying

his motion to continue the trial. Defendant also asserts that the trial court committed

reversible error in admitting into evidence a jailhouse audio recording and his statement

given to the police while he was in the hospital. We reject defendant's contentions and

affirm the judgment.

## II

## FACTS

On April 7, 2011, at approximately 7:00 p.m., the San Bernardino County

Sheriff's Department attempted to initiate a traffic stop in furtherance of executing an

outstanding arrest warrant on defendant. Defendant was a passenger in a vehicle driven

by his girlfriend. When two police cars attempted to initiate the traffic stop, defendant's

vehicle sped away. The car eventually pulled over. Defendant quickly got out of the car

and took off running. Deputy Peppler contacted the driver who remained in the car,

---

[1] Unless otherwise noted, all statutory references are to the Health and Safety
Code.

defendant's girlfriend, and searched the car. Peppler found a nine-millimeter handgun underneath the front passenger seat where defendant had been sitting.

Meanwhile, two other deputies chased defendant on foot, while Sheriff's Detective Futscher drove an undercover truck through the neighborhood looking for defendant. As Futscher was driving, defendant ran out from behind a vehicle, in front of Futscher's truck, and Futscher accidently hit him with the truck, breaking defendant's femur. Futscher apprehended defendant, called for medical care, and searched him. Futscher found a bindle of methamphetamine and $6,491 in cash.

About 90 minutes after the accident, Futscher interviewed defendant at the hospital. Defendant admitted he knew there was an outstanding warrant out for his arrest and that, when the police attempted to stop his girlfriend's car, he initially told her not to stop, but eventually told her to pull over. He then ran from the vehicle. Defendant also admitted that he had bought the gun found in the car a few weeks earlier.

On April 17, 2011, defendant called his mother from jail. The call was recorded and played for the jury. During the call, defendant stated that he had been "busted" and caught with a "nine."

III

DEFENDANT'S MOTION TO CONTINUE TRIAL

Defendant contends the trial court abused its discretion in denying his motion to continue the trial to allow him to prepare adequately for trial. Defendant requested a continuance on the grounds the prosecution failed to disclose more than 30 days before trial the name of its witnesses and the written transcript of an audio recording of a

3

jailhouse call. The transcript and amended witness list, which added the witness who transcribed the audio recording, were not disclosed until two days before trial. This, defendant argues, prevented him from adequately preparing for trial and therefore there was good cause for the trial court to grant a continuance.

Penal Code section 1050, subdivision (e) provides that, "Continuances shall be granted only upon a showing of good cause." In determining whether good cause exists to grant or deny a continuance, a court looks to the facts and circumstances of each case. The trial court, in determining whether good cause exists, as necessary to grant a continuance, "must consider ""'not only the benefit which the moving party anticipates but also the . . . burden on other witnesses, jurors and the court and, above all, whether substantial justice will be accomplished or defeated by a granting of the motion.'"'"" (*People v. Doolin* (2009) 45 Cal.4th 390, 450.) "'[A]s a general matter, a trial court "has broad discretion to determine whether good cause exists to grant a continuance of the trial" [citation], and that, in reviewing a trial court's good-cause determination, an appellate court applies an "abuse of discretion" standard. [Citations.]' [Citation.]" (*People v. Engram* (2010) 50 Cal.4th 1131, 1163, quoting *People v. Sutton* (2010) 48 Cal.4th 533, 546.)

Here, the trial court did not abuse its discretion in denying defendant's request for a continuance because the reason for requesting a continuance, given by defense counsel in the lower court, did not constitute good cause. The grounds for a continuance asserted on appeal were not raised in the trial court. The clerk's transcript states, "Defense has filed a motion to continue pursuant to PC1050," but a written motion is not included in

4

the record on appeal. This court therefore cannot determine the grounds upon which the motion was made, other than from the reporter's transcript. The October 21, 2011, minute order reflecting the ruling on the motion, merely states that the trial court denied defendant's motion for a continuance. There is no statement in the minute order of the trial court's reasons for denying the motion. However, according to the reporter's transcript of the hearing, defense counsel moved for a continuance because he was required to try another case at the same time as defendant's trial.

The trial court explained during the motion hearing that it denied the continuance because, on September 26, 2011, defense counsel announced ready to try the case and selected the trial date of October 24, 2011. Then defense counsel inappropriately gave priority to the case of another client who was out-of-custody, whereas defendant was in custody. The trial court therefore concluded there was no good cause for continuing defendant's trial. Defendant's trial thus began, as originally scheduled, on October 24, 2011, with defense counsel representing defendant.

On appeal, defendant argues the prosecution failed to disclose timely the written transcript of an audio recording of a jailhouse call and the witness who transcribed the recording. Because the record does not reflect that defendant requested a trial continuance based on the grounds asserted on appeal, defendant forfeited his objection to the trial court's ruling on his motion for a trial continuance. (*United States v. Olano* (1993) 507 U.S. 725, 731; *People v. Partida* (2005) 37 Cal.4th 428, 431.) Even if defendant did not forfeit the grounds asserted for the first time on appeal, we conclude

5

the trial court did not abuse its discretion in denying a continuance because defendant has failed to establish there was good cause for a continuance.

IV

MOTION TO SUPPRESS AUDIO RECORDING EVIDENCE

During defendant's jailhouse telephone conversation with his mother, defendant explained he had received traffic tickets, which were unresolved. Defendant then implicated himself when he told his mother officers "[b]usted me on a 211 – reckless driving, plus the nine I just got caught with, and . . . the first 459 [burglary prior]. That's some real shit." Defendant added that his attorney wanted him to plead guilty only to the traffic tickets. Defendant stated, "I'll plead guilty to all of that Ma."

Defendant filed a motion in limine to exclude the jailhouse recording on the ground it was of poor quality and inaudible, making the recording untrustworthy. Defendant also argued the recording was irrelevant and created a substantial risk of undue prejudice by misleading the jury. The trial court conducted a hearing on the admissibility of the recording after listening to it and reviewing the recording transcript. The court found the recording was very relevant and audible, particularly as to defendant admitting he was in possession of the a nine-millimeter handgun.

Defendant argues the trial court erred in admitting into evidence the jailhouse recording because it was of such poor quality that it resulted in speculation and unfairness. Defendant also asserts that his statement that he was caught with a "nine" could be misconstrued by the jury as meaning that he actually possessed a nine-millimeter handgun when he meant something else. Deputy Peppler testified he searched

6

the vehicle involved in the incident and found a nine-millimeter handgun underneath the front passenger seat where defendant had been sitting.

When a trial court rules on a motion to suppress evidence, it "'"(1) finds the historical facts, (2) selects the applicable rule of law, and (3) applies the latter to the former to determine whether the rule of law as applied to the established facts is or is not violated. [Citations.] . . . The court's resolution of the first inquiry, which involves questions of fact, is reviewed under the deferential substantial-evidence standard. [Citations.] Its decision on the second, which is a pure question of law, is scrutinized under the standard of independent review. [Citations.] Finally, its ruling on the third, which is a mixed fact-law question that is however predominantly one of law, . . . is also subject to independent review." [Citation.]' [Citations.]" (*People v. Carter* (2005) 36 Cal.4th 1114, 1140.)

In this case, we apply the independent standard of review when applying the facts to the law. In doing so, we conclude the trial court did not err in admitting the recording because it was highly relevant. Defendant indicated in the recording that he had been caught in possession of a nine-millimeter handgun and was willing to plead guilty to the offense. Defendant has failed to establish that the trial court abused its discretion and erred in admitting the recording based on a finding that the recording was sufficiently audible and relevant, particularly the portion of the tape implicating defendant of possession of a handgun.

Even if we were to assume that the trial court erred in admitting the recording, any error was harmless because it is not reasonably probable that the jury would have reached

7

a more favorable result to defendant had the challenged evidence been excluded. (*People v. Carter, supra,* 36 Cal.4th at p. 1152; *People v. Watson* (1956) 46 Cal.2d 818, 836.) Defendant's defense was that the handgun did not belong to him. The officer who found the handgun testified that it was found under the front passenger seat where defendant had been sitting and, shortly after the incident, defendant admitted to the investigating detective that the gun was his and he had purchased it a few weeks earlier.

V

ADMISSIBILITY OF DEFENDANT'S IN-CUSTODY INTERROGATION

Defendant contends the trial court erred in admitting statements and evidence obtained when Detective Futscher interrogated defendant at the hospital about an hour and a half after the charged offense. Defendant argues that he did not voluntarily, knowingly, and intelligently waive his *Miranda*[2] rights because, at the time, he was in custody, in severe pain, and heavily medicated for injuries sustained when Futscher struck defendant with a police vehicle.

Defendant filed a motion in limine under Penal Code section 1538.5, to suppress statements defendant made during the hospital interrogation. Defendant argued his statements were made in violation of his Fifth Amendment rights, under *Miranda*. The People filed opposition arguing defendant voluntarily and intelligently waived his *Miranda* rights. The trial court conducted an Evidence Code section 402 hearing (402 hearing) during which Futscher testified. Futscher testified he interviewed defendant in

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436.

8

the hospital while defendant was handcuffed to the bed. Futscher began the interview by advising defendant of his *Miranda* rights. Defendant responded that he understood his rights and waived them. Defendant then provided a statement about the incident. Futscher testified that during the hospital interrogation, defendant appeared lucid and seemed to understand Futscher's questions. Defendant responded appropriately. Futscher spoke with defendant for about 10 minutes, with the formal part of the interview lasting about five minutes, until defendant invoked his rights and requested to speak to a lawyer.

Futscher further testified that defendant did not seem to be medicated or in so much pain that he did not understand Futscher's questions. Defendant spoke clearly. Futscher had no problem understanding him. He seemed to recall accurately names and events leading up to when defendant was struck by Futscher's truck. Medical personnel in the emergency room told Futscher that defendant had suffered a broken femur.

Defendant testified during the 402 hearing that, while being transported to the hospital, he was given a shot and put on an IV drip. Defendant only remembered "[b]its and pieces" of being in the hospital. He remembered that, after arriving at the hospital, he spoke to a deputy and had surgery. He did not remember the surgery because he was in so much pain. Defendant also did not remember the questions Futscher asked him or anything defendant told him but remembered Futscher was present at the hospital. Defendant only remembered waking up the next day in the hospital.

After hearing testimony and argument, the trial court denied defendant's motion to exclude defendant's hospital statements. The court explained that extensive case law

9

holds that waivers of *Miranda* rights by individuals who are injured and medicated for pain are not necessarily involuntary.  The court must consider the totality of the circumstances.  In the instant case, the evidence established circumstances reflecting that defendant was lucid, he was able to respond clearly, he understood his *Miranda* rights, and he willingly gave a statement.

Defendant argues that he did not voluntarily waive his *Miranda* rights.  In reviewing such a claim, "we accept the trial court's resolution of disputed facts and inferences, and its evaluation of credibility, if supported by substantial evidence. [Citation.]  Although we independently determine whether, from the undisputed facts and those properly found by the trial court, the challenged statements were illegally obtained [citation], we '"give great weight to the considered conclusions" of a lower court that has previously reviewed the same evidence.'  [Citations.]"  (*People v. Wash* (1993) 6 Cal.4th 215, 235-236; see also *People v. Whitson* (1998) 17 Cal.4th 229, 248.)  The government has the burden of demonstrating voluntariness by a preponderance of the evidence.  (*Whitson,* at p. 248; *People v. Weaver* (2001) 26 Cal.4th 876, 920.)  Generally, voluntariness is determined from the totality of the circumstances, including the circumstances surrounding the interrogation and the defendant's characteristics.  (*People v. Williams* (1997) 16 Cal.4th 635, 660.)

On appeal, defendant challenges the admission of his statements made at the hospital on the ground they were involuntary in that he lacked the mental capacity to waive his *Miranda* rights.  He claims he was interrogated at a time when he was in a

10

weakened physical and psychological condition as the result of his femur injury and because he was medicated.

Applying the foregoing law to the record before us, we conclude defendant's statements were voluntary. Futscher testified that defendant was read his rights and waived them. Futscher also testified that defendant said he understood his rights, and his responses seemed normal. The trial court believed Futscher's testimony and there is nothing in the record to indicate otherwise. Nor did defendant testify he did not understand his rights. Rather, defendant made the self-serving statement that he did not remember much of anything, including Futscher asking him questions.

Even assuming defendant was medicated and or suffering pain from his femur injury, there was substantial evidence that he voluntarily waived his *Miranda* rights. Futscher's testimony established that defendant was able to comprehend and answer all the questions posed to him. (*People v. Hendricks* (1987) 43 Cal.3d 584, 591 [the mere fact of consumption of drugs or alcohol does not establish an impairment of capacity so as to render a confession inadmissible]; *People v. Breaux* (1991) 1 Cal.4th 281, 299-301 [claim of incapacity to waive *Miranda* rights premised on the defendant's mental condition due to injection of morphine to reduce pain rejected where nothing in the record indicated he did not understand questions posed to him]; *People v. Jackson* (1989) 49 Cal.3d 1170, 1189 [claim of incompetence premised on the defendant's physical and mental condition due to confrontation with officers and ingestion of drugs rejected where nothing in the record indicated he did not understand questions posed to him].) Futscher's testimony established that defendant was lucid during the hospital

11

interrogation and gave clear answers. We therefore conclude the evidence was sufficient to support the trial court's finding that defendant voluntarily waived his *Miranda* rights and, in turn, the court did not err in admitting defendant's hospital statements.

## VI

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

McKINSTER
J.