Filed 8/29/13  P. v. Anzalone CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H035123 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. CC935164) |
| v. | |
| CHRISTINA MARIE ANZALONE, | |
| Defendant and Appellant. | |

## STATEMENT OF THE CASE

An information charged defendant Christina Marie Anzalone with assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)),[1] making a criminal threat (§ 422), vandalism causing less than $400 in damage (§ 594, subd. (a)/(b)(2)(A)), and brandishing a deadly weapon (§ 417, subd. (a)(1)).  The information alleged that defendant personally used a knife in committing the assault (§§ 667, 1192.7) and personally used a knife in making the threat (§ 12022, subd. (b)(1)).  A jury acquitted defendant of vandalism, but it otherwise convicted defendant as charged.  The trial court sentenced defendant to a term of four years and eight months in prison, as follows:  three years for the assault conviction, eight months for the criminal threat conviction, and one year for the

---

[1] Subsequent unspecified statutory references are to the Penal Code.

section 12022, subdivision (b)(1) weapon enhancement. The court also sentenced defendant to a concurrent 30-day term for the brandishing conviction.

Defendant appealed. She argued that she was denied her right to a unanimous jury verdict, that the trial court erred in admitting her prior aggravated assault conviction for impeachment purposes, that the court erroneously instructed the jury regarding the prior aggravated assault conviction, and that the court erred in imposing a full-term weapon enhancement and in failing to stay the 30-day term on the brandishing conviction. We held that there was no valid verdict, and that the error was structural and thus reversible per se. Our Supreme Court reversed, concluding that the error was not structural, and that the error was harmless. The Supreme Court remanded the case to this court and directed us to consider defendant's remaining claims.

We now conclude that the trial court erred in admitting defendant's prior aggravated assault conviction, but it is not reasonably probable that the verdict would have been more favorable to defendant absent the error. We further conclude that the court properly instructed the jury regarding the consideration of prior convictions. Finally, we conclude that the court erred in imposing a full-term weapon enhancement and in failing to stay the term on the brandishing conviction, and we accordingly will modify defendant's sentence. As so modified, the judgment will be affirmed.

### STATEMENT OF THE FACTS

#### The Prosecution's Evidence

On February 22, 2009, Atul Patel was working at the front desk at the Hedding Inn in San Jose. At approximately 5:00 p.m., defendant entered the hotel and asked Patel if she could speak with Leon Wallace, a hotel resident. Patel informed defendant that Wallace was not at the hotel, and he also told defendant that she could not go into Wallace's room. Defendant became angry, accused Patel of lying, and walked out of the hotel. Approximately three minutes later, defendant walked back into the hotel and

2

knocked over Patel's computer. Defendant pulled a knife out of her pocket and told Patel, "I'll kill you. I'll hurt you." Patel was afraid that defendant would use the knife because defendant appeared to have been drinking. Defendant also appeared to be "under the influence of an illicit drug." Patel called 911, and defendant left.

Shortly after 5:00 p.m., Richard Malott and his wife, Kimberly Schneider-Malott, went to City Team Ministries to eat dinner. Schneider-Malott exited City Team Ministries, and defendant approached her. Defendant told Schneider-Malott that she could not get a meal because she was drunk. Schneider-Malott gave defendant some bagels. Malott exited City Team Ministries, and he told Schneider-Malott to come to their truck. Defendant said that she was not finished talking to Schneider-Malott, she yelled and swore at Malott, she accused Malott of abusing Schneider-Malott, and she "chest butt[ed]" Malott. Malott believed that defendant was trying to incite a fight. Malott walked away from defendant, and defendant ran toward him. Malott turned around, and defendant reached into her pocket. Defendant threw a knife and a bagel at Malott. The knife hit Malott's chest, causing a red mark. Malott picked up the knife, and he and Schneider-Malott got into their truck. Defendant spat on the truck's windshield and grabbed the truck's antenna. As Malott drove away, the antenna broke off of the truck.

San Jose Police Officer Brandon Kelsoe tried to speak with defendant immediately after Malott drove away. Defendant was "too intoxicated and angry" to be interviewed.

*The Defense Evidence*

Defendant testified that she pushed over Patel's computer because she was angry that Patel had lied to her. She denied threatening Patel, and she denied brandishing the knife at Patel. She explained that the knife was clipped to the thumb hole of her sweatshirt the entire time she was inside the hotel.

3

Defendant testified that she went to City Team Ministries in order to get food.  She explained that she yelled and swore at Malott because he had been verbally abusive to his wife.  She admitted that she "was trying to get into a fight with him," but he "wasn't taking the bait."  She denied throwing the knife at Malott.  She explained that the knife, which was still clipped to the thumb hole of her sweatshirt, "flew off" and "skidded across the floor" when she moved her arms.  She grabbed the truck's antenna in an effort to retrieve her knife from Malott.

Defendant testified that she was intoxicated at the time of the charged crimes.  She consumed two to four 40-ounce bottles of malt liquor before the charged crimes, and she admitted that her alcohol consumption affected her "ability to remember the incidents of that day."  She did not remember the majority of her conversation with Schneider-Malott, she did not remember whether Schneider-Malott gave her food, she did not remember what Malott said to Schneider-Malott, and she did not remember whether Malott responded to her yelling and swearing.

Defendant admitted that she had a prior conviction for assault with force likely to cause great bodily injury.  She also admitted that she had a prior conviction for vehicle theft.

## DISCUSSION

Defendant contends that the judgment must be reversed because the trial court erred in admitting her prior aggravated assault conviction for impeachment purposes and because the court provided misleading instructions that improperly invited the jury to use the prior conviction as propensity evidence.  Defendant alternatively requests that we modify her sentence, arguing that the court erred in imposing a full term for the section 12022, subdivision (b)(1) weapon enhancement and in failing to stay the term on the brandishing conviction pursuant to section 654.

4

The People contend that defendant failed to object to the admission of the prior aggravated assault conviction, and that she therefore forfeited her claim that the trial court erred in admitting the conviction for impeachment purposes. The People further argue that the instructions unambiguously prohibited the jury from construing the prior aggravated assault conviction as propensity evidence. The People concede that defendant's sentence must be modified.

As set forth below, we conclude that the trial court's consideration of impermissible factors, ignorance of a material fact, and failure to apply the correct legal standard rendered the admission of the aggravated assault conviction an abuse of discretion. However, because other properly admitted evidence severely discredited defendant's testimony, we conclude that it is not reasonably probable that the verdict would have been more favorable to defendant absent the error. We also conclude that the instructions were not misleading and did not permit the jury to construe defendant's prior aggravated assault conviction as propensity evidence. Finally, we will modify the sentence in the manner requested by defendant, and we will affirm the judgment as modified.

**I.** *Although The Trial Court Erred In Admitting The Prior Conviction, The Error Does Not Require Reversal*

**A. Background**

Before trial, the prosecutor moved to impeach defendant with prior convictions involving moral turpitude if defendant chose to testify. The trial court noted that defendant had three prior convictions: a felony violation of section 245, subdivision (a)(1), a misdemeanor violation of section 10851, and a misdemeanor violation of section 594. The court commented that it was "familiar" with defendant's prior violation of section 245, referring to it as "the 'cane' case." The court asked the prosecutor whether she was "representing that the 245(a)(1) is a moral turpitude offense."

5

The prosecutor responded that she believed the section 245 conviction was an offense involving moral turpitude.

The court asked defense counsel whether he wished to object to the admission of any of defendant's prior convictions. Defense counsel responded, "Yes, your honor. The 245(a)(1) conviction from September 15th of 2008 and also the October 19th 2004 conviction of the vandalism. [¶] Beginning with the 245 conviction, I would have no objection if the court were to have the language changed to 'Ms. Anzalone has been convicted of a felony offense involving moral turpitude.' " Defense counsel argued that the section 245 conviction was "very similar" to the charged offense, and that introduction of the section 245 conviction would therefore be "overly prejudicial" within the meaning of Evidence Code section 352. The prosecutor argued, "The case law is well established on the fact that the court has discretion and it's not a violation of 352 to allow in crimes that are similar in conduct or even the same as the currently charged crime."

The court responded, "I agree it's not a violation. . . . I'm going to [take a] look at the prior again here. I remember the case, I want to take a look at it. The cane incident." A discussion then occurred off the record.

The court resumed the hearing and stated, "Back on the record. In looking at the priors that the People are asking to bring in should the defendant testify, they all are moral turpitude offenses and they are recent . . . . [¶] And the 352 analysis, I think it's far more probative than prejudicial because it shows severe moral turpitude deprivation to commit these types of offenses, and the 245 specifically that the defense attorney talked about. I think if it were a 245 with a knife, I certainly would sanitize it not to include a knife. [¶] So I'm going to give the defense an option if they wish to take it simply calling it an assault with a deadly weapon felony or an assault with a deadly weapon felony with the instrument being a cane distinguished from the knife in this case. [¶] Did you have any preference on that, those two while you're thinking about it?"

6

Defense counsel responded, "I would . . . have to say damned if I do, damned if I don't. Six of one, half dozen of the other. Both options are not particularly palatable." The court responded, "The thing that I think would make it extremely prejudicial [is] if it was 245 with a knife. Can 245 somebody with all kinds of things."

The court finally ruled that all three of defendant's prior convictions were admissible for impeachment purposes. In issuing the ruling, the court noted, "So now the cases are in my mind. I do believe it's more probative, it's important for the DA to have this evidence to show that [defendant], that if she should testify, show things by these convictions that reflect her morales [*sic*] and judging her credibility as a witness. So under 352 I find it more probative than prejudicial."

Despite the court's comments to the contrary, defendant's prior section 245 conviction was actually a conviction for assault with force likely to cause great bodily injury. On direct examination, defendant admitted that she had a "conviction for violation of Penal Code section 245(a)(1) which is assault with force likely to cause great bodily injury." On cross-examination, defendant again admitted that she had a "prior conviction for assault likely to cause great bodily injury."

## B. Defendant's Claim is Not Forfeited

Preliminarily, we must address the issue of forfeiture. The People assert that defendant did not object to the admission of the section 245 conviction, and that defendant merely requested that the trial court sanitize the conviction.

In order to bring an appellate challenge to the admission of evidence, the defendant must make an objection in the trial court. (*People v. Viray* (2005) 134 Cal.App.4th 1186, 1209.) Such an objection must "make clear the specific ground of the objection." (Evid. Code, § 353, subd. (a).) Here, defendant adequately objected to the admission of the section 245 conviction. When the trial court asked defense counsel whether he wished to object to the admission of any of defendant's prior convictions,

7

defense counsel responded, "Yes, your honor. The 245(a)(1) conviction from September 15th of 2008 . . . ." Defense counsel emphasized that the section 245 conviction was very similar to the charged offense, and that introduction of the conviction would be unduly prejudicial within the meaning of Evidence Code section 352. Although defense counsel stated that there would be no objection *if* the trial court sanitized the conviction, this comment does not require us to conclude that defendant failed to object to the admission of the section 245 conviction. In light of the trial court's refusal to sanitize the conviction, defense counsel's comment made clear that defendant maintained the objection to the admission of the section 245 conviction. Accordingly, because defendant adequately objected to the admission of the conviction, we conclude that defendant's claim is not forfeited. We now turn to the merits of defendant's claim.

### C. Standard of Review

The trial court's ruling regarding the admissibility of a defendant's prior conviction for impeachment purposes is reviewed for abuse of discretion. (*People v. Rowland* (1992) 4 Cal.4th 238, 259, fn. 1.)

The following principles must guide an appellate court's abuse of discretion analysis: " 'The discretion of a trial judge is not a whimsical, uncontrolled power, but a legal discretion, which is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no reasonable basis for the action is shown.' (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 364, p. 420; see *Westside Community for Independent Living, Inc. v. Obledo* (1983) 33 Cal.3d 348, 355.) 'The scope of discretion always resides in the particular law being applied, i.e., in the "legal principles governing the subject of [the] action . . . ." Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion. [Citation.] . . . [¶] The legal principles that govern the subject of discretionary action vary greatly with context. [Citation.] They are derived

8

from the common law or statutes under which discretion is conferred.' (*City of Sacramento v. Drew* (1989) 207 Cal. App. 3d 1287, 1297-1298.) To determine if a court abused its discretion, we must thus consider 'the legal principles and policies that should have guided the court's actions.' (*People v. Carmony* [(2004)] 33 Cal.4th [367,] 377.)" (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773).)

### D. The Trial Court Abused its Discretion

Evidence Code section 788 authorizes admission of a prior felony conviction for "the purpose of attacking the credibility of a witness." A felony conviction is admissible under Evidence Code section 788 only if the felony involves "moral turpitude." (*People v. Castro* (1985) 38 Cal.3d 301, 317 (*Castro*).)

The trial court "may admit evidence of a felony conviction to impeach the credibility of a witness if and only if the least adjudicated elements of the underlying felony necessarily involve moral turpitude, i.e., the readiness to do evil." (*People v. Lang* (1989) 49 Cal.3d 991, 1053.) "[I]n determining whether a previous felony involves moral turpitude the court cannot go behind the conviction and take evidence on or consider the facts and circumstances of the particular offense. Instead, the court must look to the statutory definition of the particular crime and only if the least adjudicated element of the crime necessarily involves moral turpitude is the prior conviction admissible for impeachment purposes." (*People v. Bautista* (1990) 217 Cal.App.3d 1, 5-6.) Thus, "anything beyond the least adjudicated elements may not be examined" by the trial court. (*People v. Lepolo* (1997) 55 Cal.App.4th 85, 89; see also *People v. Ardoin* (2011) 196 Cal.App.4th 102, 120 ["the facts and circumstances underlying prior offenses are inadmissible for impeachment purposes"].)

Evidence Code sections 788 and 352 "provide discretion to the trial judge to exclude evidence of prior felony convictions when their probative value on credibility is

9

outweighed by the risk of undue prejudice." (*People v. Muldrow* (1988) 202 Cal.App.3d 636, 644 (*Muldrow*).) "In exercising its discretion, the trial court must consider four factors identified by our Supreme Court in *People v. Beagle* (1972) 6 Cal.3d 441, 453 (hereafter, *Beagle*): (1) Whether the prior conviction reflects adversely on an individual's honesty or veracity; (2) the nearness or remoteness in time of a prior conviction; (3) whether the prior conviction is for the same or substantially similar conduct to the charged offense; and (4) what the effect will be if the defendant does not testify out of fear of being prejudiced because of the impeachment by prior convictions." (*People v. Mendoza* (2000) 78 Cal.App.4th 918, 925 (*Mendoza*).) Although the trial court is required to consider the *Beagle* factors, the factors "need not be rigidly followed." (*Ibid.*)

In order to properly exercise its discretion in admitting a prior conviction for impeachment purposes, the trial court " 'must know and consider all material facts and all legal principles essential to an informed, intelligent, and just decision.' " (*Muldrow, supra,* 202 Cal.App.3d at p. 644.) An "abuse of discretion arises if the trial court based its decision on impermissible factors [citation] or on an incorrect legal standard [citations]." (*People v. Knoller* (2007) 41 Cal.4th 139, 156.)

In the instant case, the trial court's admission of defendant's section 245 conviction was based on a misunderstanding of the actual conviction that the prosecutor sought to admit. When considering whether to admit defendant's section 245 conviction, the court repeatedly referred to the conviction as an assault with a deadly weapon. The court emphasized that the conviction would be introduced to the jury as an assault with a deadly weapon. Contrary to the court's statements, the prior conviction was actually a conviction for assault with force likely to cause great bodily injury. Given the court's ignorance of the actual conviction that the prosecutor sought to admit, the court's admission of the section 245 conviction cannot be deemed an informed and intelligent

10

decision. We therefore must conclude that that the court improperly exercised its discretion in admitting defendant's section 245 conviction. (See generally *Muldrow, supra,* 202 Cal.App.3d at p. 644 [a trial court properly exercises its discretion when it knows and considers all material facts]; *People v. Medina* (1980) 107 Cal.App.3d 364, 370 [trial court action undertaken "without full knowledge of all the material facts" was an abuse of discretion].)

The foregoing conclusion is supported by additional circumstances. The admission of the prior conviction was also based on impermissible factors. The trial court determined that the section 245 conviction was admissible because it involved "severe moral turpitude deprivation." The record shows that in concluding that the conviction involved such moral turpitude, the court went beyond the least adjudicated elements of the offense and considered the facts underlying the conviction. The court stated that it was "familiar" with defendant's section 245 conviction. The court repeatedly stated that the section 245 conviction involved the use of a cane, and it commented that introduction of the conviction would be more prejudicial if it involved the use of a knife. The court then reviewed the records for the section 245 conviction, and it immediately declared the offense to be one involving "severe moral turpitude deprivation." The only reasonable conclusion to be derived from this record is that the court improperly relied on the facts of the section 245 conviction in determining the degree of moral turpitude associated with the offense. The court's impermissible reliance on the facts of the conviction in making its moral turpitude determination—a determination that constituted the major factor in the court's decision to admit the section 245 conviction—further supports our conclusion that the court improperly exercised its discretion. (See generally *Hernandez v. Amcord, Inc.* (2013) 215 Cal.App.4th 659, 678 ["evidentiary rulings which are based on a misunderstanding of the law are an abuse of discretion"].)

11

Finally, the trial court also failed to apply the correct legal standard in admitting the prior conviction. Although the court briefly considered the nearness in time of the prior section 245 conviction, the court did not consider the remaining *Beagle* factors. Absent from the court's comments was any discussion of the prior conviction's relationship to defendant's honesty and veracity, any appreciation of the circumstance that the prior conviction and the current case both involved violations of section 245, and any consideration of the prior conviction's effect on defendant's choice to testify. Even if the court's comments regarding the moral turpitude associated with the prior section 245 conviction could be considered a determination of honesty and veracity, the court nonetheless improperly relied on the facts underlying the conviction in making any such determination regarding honesty and veracity. (See, e.g., *Mendoza, supra,* 78 Cal.App.4th at p. 925 [considering the least adjudicated elements of prior convictions, not the facts of those convictions, in determining whether the convictions reflected adversely on honesty and veracity].) Thus, the court's failure to apply the correct legal standard additionally supports our conclusion that the court improperly exercised its discretion.

In summary, the trial court's admission of defendant's prior section 245 conviction was based on a misunderstanding of the actual conviction that the prosecutor sought to admit, impermissible factors, and an incorrect legal standard. We therefore must conclude that the court abused its discretion in admitting the conviction for impeachment purposes.

**E. It is Not Reasonably Probable That the Verdict Would Have Been More Favorable to Defendant Absent the Error**

State law error in admitting evidence is generally subject to the prejudice standard articulated in *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*). (*People v. Partida* (2005) 37 Cal.4th 428, 439 (*Partida*).) Accordingly, when a trial court erroneously admits a defendant's prior felony conviction to impeach the defendant's

testimony, the reviewing court applies the *Watson* standard. (See *People v. Gurule* (2002) 28 Cal.4th 557, 609 (*Gurule*) [applying *Watson* standard]; *Castro, supra,* 38 Cal.3d at pp. 318-319 [same].) Under the *Watson* standard, reversal is required only if "it is reasonably probable the verdict would have been more favorable to the defendant absent the error." (*Partida, supra,* 37 Cal.4th at p. 439, citing *Watson, supra,* 46 Cal.2d at p. 836.)

Here, it is not reasonably probable that the verdict would have been more favorable to defendant absent the erroneous admission of her prior section 245 conviction. Other properly admitted evidence significantly damaged defendant's credibility. Copious evidence established that defendant was intoxicated at the time of the charged crimes: defendant testified that she had consumed two to four 40-ounce bottles of malt liquor and was intoxicated, Patel testified that defendant was drunk and appeared to be under the influence of an illicit drug, and Officer Kelsoe testified that defendant was too intoxicated to be interviewed. The evidence further demonstrated that defendant's intoxication impaired her ability to remember the events surrounding the charged crimes—defendant was unable to recall many pertinent facts, and she specifically testified that her alcohol consumption undermined her "ability to remember the incidents of that day." Thus, even if the section 245 conviction had not been admitted, defendant's intoxication and resulting memory impairment likely would have caused the jury to reject defendant's version of events. (See generally *People v. Melton* (1988) 44 Cal.3d 713, 737 [intoxication is a basis for impeaching credibility].) Moreover, there was additional evidence that cast doubt upon defendant's testimony. Defendant does not dispute that the trial court properly admitted her prior conviction for vehicle theft. Given that "theft crimes necessarily involve an element of deceit," the admission of the vehicle theft conviction severely damaged defendant's credibility. (*Gurule, supra*, 28 Cal.4th at p. 608.) In light of the strong, properly admitted evidence

13

showing defendant's lack of credibility, we conclude that the jury likely would have discredited defendant's testimony and reached the same verdict even if the trial court had excluded defendant's prior section 245 conviction. (See generally *People v. Williams* (1999) 72 Cal.App.4th 1460, 1465 [finding any error in admitting the defendant's prior conviction for resisting an officer harmless where the defendant was properly subject to impeachment with a prior burglary conviction].)

Additional circumstances support our conclusion. As discussed *infra*, the trial court properly instructed the jury that prior convictions could be considered only for the purpose of evaluating a witness's credibility. Thus, contrary to defendant's assertion, the jury could not have construed the section 245 conviction as propensity evidence establishing defendant's guilt. Indeed, the jury acquitted defendant of vandalism, thereby showing that the jury did not convict defendant on the remaining charges merely because she had a prior section 245 conviction. These circumstances, combined with the properly admitted evidence that showed defendant's lack of credibility, compel us to conclude that the jury very likely would have reached the same verdict even if the trial court had excluded defendant's section 245 conviction. (See generally *Castro, supra,* 38 Cal.3d at p. 318 [finding error in admitting the defendant's prior conviction harmless, in part, because the jury was instructed to consider the prior conviction "only for the purpose of determining the credibility of the witness"].)

For the foregoing reasons, we conclude that it is not reasonably probably that the verdict would have been more favorable to defendant absent the admission of her prior section 245 conviction. The error in admitting the section 245 conviction therefore does not warrant reversal.

14

**II.** *The Trial Court Properly Instructed The Jury Regarding Consideration Of Prior Felony Convictions*

Pursuant to CALCRIM No. 316, the trial court instructed the jury regarding consideration of prior felony convictions, as follows:  "If you find that a witness has been convicted of a felony, you may consider that fact only in evaluating the credibility of the witness's testimony.  The fact of a conviction does not necessarily destroy or impair a witness's credibility.  It is up to you to decide the weight of that fact and whether that fact makes the witness less believable."

Defendant asserts that the foregoing instruction was ambiguous and misleading because it did "not distinguish between proper impeachment use of a prior, and the improper consideration of the prior as evidence of propensity to commit the crime."  Defendant therefore contends that the instruction improperly invited the jury "to use propensity evidence to reject the credibility of [defendant's] testimony."  (Italics omitted.)  In support of this argument, she cites *People v. Brown* (1993) 17 Cal.App.4th 1389 (*Brown*).  As explained below, defendant's argument is meritless.

When a defendant asserts that a jury instruction is ambiguous, a reviewing court considers "whether there is a reasonable likelihood that the jury misunderstood and misapplied the instruction."  (*People v. Smithey* (1999) 20 Cal.4th 936, 963.)  Here, there is not a reasonable likelihood that the jury misunderstood and misapplied CALCRIM No. 316.  The instruction explicitly informed the jury that it could consider a prior felony conviction *only* for the purpose of evaluating credibility.  Thus, the plain language of the instruction was unambiguous and in no way informed the jury that it could construe a prior conviction as propensity evidence.  We accordingly cannot conclude that the instruction misled the jury regarding the manner in which it could consider a prior conviction.  (See generally *People v. Yeoman* (2003) 31 Cal.4th 93, 139 [a reviewing

15

court presumes that jurors understand and correctly follow instructions, especially "where the relevant instructional language seems clear and easy to understand"].)

Moreover, to the extent that defendant contends the trial court should have modified the instruction to specify that prior felony convictions cannot be considered evidence of propensity to commit a crime, the claim is not cognizable on appeal. "Generally, a party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language." (*People v. Castaneda* (2011) 51 Cal.4th 1292, 1348.) Because defendant failed to request language that amplified or clarified the trial court's legally correct instruction, we cannot find error in the instruction's silence regarding the relationship between felony convictions and propensity to commit a crime.

Finally, *Brown* does not require us to find instructional error. In *Brown*, the appellate court reversed the defendant's child molestation conviction because the trial court erroneously admitted, pursuant to Evidence Code section 1101, subdivision (b), the defendant's prior acts of child molestation as evidence of identity and as evidence that bolstered the credibility of detectives who testified against the defendant. (*Brown, supra,* 17 Cal.App.4th at pp. 1394-1398.) In concluding that the defendant was prejudiced by the admission of the evidence, the *Brown* court reasoned in part: "[The instructions] erroneously told the jury the evidence might be relevant to the issue of identity. The instructions also ambiguously told the jury they could consider the evidence in determining '[t]he believability of a witness and the weight to be given the testimony of each witness.' This ambiguous language could invite a jury to consider a defendant's propensity to commit a crime; e.g., the jury could interpret the language to mean they could consider the evidence presented as to the other molestations as tending to show [the defendant] was a child molester and therefore his denial of molesting J. was less believable." (*Id.* at pp. 1397-1398.)

16

Defendant's case is distinguishable from *Brown*. The issue in *Brown* was whether the trial court prejudicially erred in admitting evidence pursuant to Evidence Code section 1101, subdivision (b). *Brown* did not consider the issue presented here—whether the trial court properly instructed the jury regarding felony convictions introduced for impeachment purposes. Thus, because "cases are not authority for propositions not considered," *Brown* does not require us to find instructional error. (*People v. Ault* (2004) 33 Cal.4th 1250, 1267, fn. 10.) Furthermore, even if we relied on the *Brown* court's comments regarding the ambiguous nature of the instruction, we would still conclude that *Brown* is inapposite. The *Brown* instruction employed different language than the instruction in defendant's case. The *Brown* instruction permitted the jury to consider prior convictions in determining not only the believability of a witness, but also the weight to be afforded to a witness's testimony. The *Brown* instruction also informed the jury that prior convictions were relevant to the issue of identity. Here, in contrast, the instruction specifically informed defendant's jury that prior felony convictions could be considered only for the purpose of evaluating a witness's credibility. Because the *Brown* instruction employed different language that permitted much broader consideration of felony convictions, the instruction here is not analogous to the *Brown* instruction. *Brown* therefore does not compel us to conclude that the trial court incorrectly instructed defendant's jury.

### III. *Defendant's Sentence Must Be Modified*

Defendant contends that section 1170.1 requires us to reduce the one-year prison term for the section 12022, subdivision (b)(1) weapon enhancement to a term of four months. Defendant additionally argues that the 30-day term for the brandishing conviction must be stayed pursuant to section 654. The People agree that the sentence should be modified in the fashion requested by defendant.

17

Section 1170.1, subdivision (a) provides, in relevant part: "The subordinate term . . . shall consist of one-third of the middle term of imprisonment prescribed for each other felony conviction for which a consecutive term of imprisonment is imposed, and shall include one-third of the term imposed for any specific enhancements applicable to those subordinate offenses." Here, the criminal threat conviction and the attendant section 12022, subdivision (b)(1) weapon enhancement comprised the subordinate term of defendant's sentence. Thus, section 1170.1 subdivision (a) required the trial court to reduce the prescribed one-year term for defendant's section 12022, subdivision (b)(1) enhancement to a four-month term. We accordingly modify the term to a four-month term.

Section 654, subdivision (a) provides, in relevant part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." "[S]ection 654 applies to situations in which several offenses are committed during a course of conduct deemed to be indivisible." (*People v. Wooten* (2013) 214 Cal.App.4th 121, 130.) Here, it is undisputed that defendant's act of brandishing the knife and her threats against Patel were part of an indivisible course of conduct. Because defendant was sentenced to an eight-month term for the criminal threat conviction, section 654 required the trial court to stay the 30-day term for the brandishing conviction. We therefore will stay the 30-day term.

18

## DISPOSITION

The one-year prison term for the section 12022, subdivision (b)(1) weapon enhancement is reduced to a term of four months. The 30-day term for the brandishing conviction is stayed. As so modified, the judgment is affirmed.

_____
RUSHING, P.J.

WE CONCUR:

_____
PREMO, J.

_____
ELIA, J.

19